UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  12/20/2023
```

MARIA CRUZ,

      Plaintiff,

-against-

SUSAN SOUTHERTON, SULLIVAN COUNTY GOVERNMENT CENTER, SULLIVAN COUNTY ADULT CARE CENTER d/b/a THE CARE CENTER AT SUNSET LAKE and JOHN DOES 1-10.

      Defendants.

21-cv-06410 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

  Plaintiff Maria Cruz ("Plaintiff"), initiated this action on July 28, 2021, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A § 2000e *et seq.*, and its Amendments ("Title VII"), the New York State Executive Law § 296 *et seq.* ("NYSHRL"), and New York state law against Defendants Susan Southerton ("Southerton"), Sullivan County Government Center (the "County"), Sullivan County Adult Care Center d/b/a The Care Center at Sunset Lake (the "Care Center"), and ten John Doe defendants (together, with Southerton, the County, and the Care Center, the "Defendants").

  Presently before the Court is the Defendants' Motion for Judgment on the Pleadings to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(c). For the following reasons, Defendants' Motion for Judgment on the Pleadings is GRANTED in part and DENIED in part.

## BACKGROUND

  The following facts are derived from the Complaint and are taken as true and constructed in the light most favorable to the Plaintiff at this stage.

1

Plaintiff is a Hispanic Female who started working for Care Center in December of 2018 as a Registered Nurse. (Compl. ¶¶ 21, 23.) Beginning in November of 2019, Plaintiff's White/Caucasian coworkers harassed, bullied, and ignored Plaintiff. (*Id*. ¶¶ 24-25.) Plaintiff complained about this treatment to her supervisors and requested to be moved to a different nursing floor. (*Id*. ¶ 26.) Plaintiff reports that several Hispanic and/or African American employees at her workplace experienced similar behavior from White/Caucasian coworkers and/or management. (*Id*. ¶ 27.) In December of 2019, Plaintiff made several complaints to Acting Administrator Southerton. (*Id*. ¶ 28.) In her Complaint, Plaintiff alleged that Southerton is a known racist who treats Hispanic and African American employees differently and has made prejudicial remarks against such employees in the past. (*Id*. ¶¶ 29-30.) Plaintiff's complaints to her supervisors and Southerton were not acknowledged or remediated. (*Id*. ¶ 31.)

In December of 2019, an incident transpired between several nurses at the Care Center including Plaintiff. (*Id*. ¶¶ 32, 34.) Half of the nurses involved in the incident were Hispanic and/or African American while the other half were White/Caucasian (*Id*. ¶ 32.) In March of 2020, Civil Service charges were brought against Plaintiff and several other Hispanic/African American Nurses involved in the December 2019 incident. (*Id*. ¶ 34.) None of the White/Caucasian Nurses involved in the same incident had Civil Service charges brought against them, although several testified as witnesses at Civil Service proceedings against Hispanic and African American nurses. (*Id*. ¶¶ 33, 36.) Plaintiff alleges that during one of the Civil Service proceedings, the County referred to Plaintiff and other Hispanic and African American nurses as "monsters" and that these Hispanic and African American nurses, including Plaintiff, casted a "reign of terror" on Sullivan County. (*Id*. ¶ 37.)

In the middle of 2020, Plaintiff testified at a Civil Service proceeding on behalf of a coworker. (*Id.* ¶ 38.) Following Plaintiff's testimony, the County threatened to bring criminal charges against Plaintiff for an unrelated incident if Plaintiff did not immediately resign. (*Id.*) Plaintiff reports that similar threats were made to other Hispanic and African American employees who testified at the same hearing. (*Id.* ¶ 39.) Shortly after said hearing, a Hispanic employee was brought up on charges following her testimony concerning the unfair and discriminatory treatment nurses received by Southerton and the County. (*Id.* ¶ 40.) On October 19, 2020, prior to Plaintiff's Civil Service hearing, Plaintiff was allegedly forced to resign due to the County's threats of bringing unrelated criminal charges against her. (*Id.* ¶ 41.) After Plaintiff's resignation, the County nevertheless brought criminal charges against Plaintiff. (*Id.* ¶ 42.) As a result of the Defendants' actions, Plaintiff seeks economic, emotional, and punitive damages. (*Id.* ¶¶ 42-43.)

## PROCEDURAL HISTORY

On July 28, 2021, Plaintiff commenced this action against Defendants. (ECF No. 1.) On October 20, 2022, Defendants filed a motion for judgment on the pleadings and their memorandum of law in support (the "Motion" or "Mot.", ECF Nos. 43 and 44.) Plaintiff filed an opposition to the Motion (the "Opposition" or "Opp.", ECF No. 49.) The Defendants also filed a reply in further support of the Motion (the "Reply", ECF No. 46.)

## LEGAL STANDARD

### A. Motion for Judgment on the Pleadings

Under the Federal Rules of Civil Procedure, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed.R.Civ.P.12(c). When deciding motions under 12(c), courts "employ [] the same…standard applicable to

dismissals pursuant to Rule 12(b)(6)." *L-7 Designs, Inc. v. Old Navy*, LLC, 647 F.3d 419,429 (2d Cir. 2011) (quoting *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009)) (quotation marks omitted).

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). The critical inquiry is whether the Plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

Plaintiff brings claims pursuant to Title VII, NYSHRL, and New York state law for discrimination, retaliation, and intentional infliction of emotional distress ("IIED") against the Defendants. Several of Plaintiff's claims suffer from preliminary deficiencies. The Court turns to these deficiencies first.

### A. No Supervisory Liability Under Title VII

As a threshold matter, Plaintiff has brought claims under Title VII against Southerton, an individual Defendant, for her role in the alleged discrimination and retaliatory termination of

4

Plaintiff's employment. Title VII, however, prohibits *employers* from engaging in discriminatory or retaliatory practices, not supervisors. It is well-settled that individual liability, even for those with supervisory responsibility, does not lie under Title VII. *See Mandell v. County of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003); *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000); *see also Tomka v. Seiler Corp.,* 66 F.3d 1295, 1313 (2d Cir. 1995) ("individual Defendants with supervisory control over the Plaintiff may not be held personally liable under Title VII."), *abrogated on other grounds by Burlington Ind. V. Ellerth,* 524 U.S 742 (1998). Plaintiff was an employee of the County and the Care Center, (Compl. ¶22.), and so may appropriately bring suit under Title VII against them, but not Southerton.

In her Opposition, Plaintiff did not respond to Defendants' argument that Title VII liability cannot lie against an individual such as Southerton. In light of Southerton's uncontested supervisory role, and because there is no individual liability under Title VII, all of Plaintiff's Title VII claims against Southerton are hereby dismissed with prejudice.

### B. Lack of Departmental Liability

Plaintiff has sued the Care Center, but "under New York law, departments which are merely administrative arms of a municipality[ ] do not have a legal identity separate apart from the municipality and cannot sue or be sued." *Tenemille v. Town of Ramapo*, No. 18-CV-724 (KMK), 2020 WL 5731964, at *16 (S.D.N.Y. Sept. 24, 2020) (quoting *Elek v. Incorporated Village of Monroe*, 815 F. Supp. 2d 801, 806 n.2 (S.D.N.Y. 2011)). The Care Center is an administrative arm of its corresponding municipality, the County, which itself is a named Defendant. "Where both the municipality and the municipal agency have been named as defendants, courts have dismissed the claims against the agency." *See id.* (citing *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002) ("Because [the] plaintiff has named the City of White Plains as a defendant, any

5

claims against the [White Plains Department of Public Safety ("WPDPS")] are redundant. WPDPS does not have its own legal identity, and therefore the claims against it are dismissed."); *Manning v. County of Westchester*, No. 93-CV-3366, 1995 WL 12579, at *2 (S.D.N.Y. Jan. 5, 1995) (removing the Westchester County Police Department as a named defendant where the County of Westchester, as the real party in interest, was already a named defendant). Because the Care Center does not have its own legal identity, all of Plaintiff's claims against the Care Center are dismissed with prejudice.

### C. Notice of Claim for State Law Claims

New York law "provides that no tort action shall be prosecuted or maintained against a municipality or any of its officers, agents, or employees unless: (1) a notice of claim has been served against the [municipality]; (2) the [municipality] has refused adjustment or payment of the claim; and (3) the action is commenced within one year and ninety days after the event upon which the claim is based occurred." *Gibson v. Comm'r of Mental Health*, No. 04–CV–4350, 2006 WL 1234971, at *5 (S.D.N.Y. May 8, 2006) (citing N.Y. Gen. Mun. Law § 50–i). A plaintiff is required to serve a notice of claim "within ninety days after the claim arises." N.Y. Gen. Mun. Law § 50–e(1)(a). Notice of claim requirements are construed strictly by New York state courts and "[f]ailure to comply with [them] ordinarily requires dismissal." *Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999). In addition, "[i]t is well settled that federal courts entertaining state law claims against municipalities are obligated to apply any applicable state law notice-of-claim provisions." *Jones v. City of New York*, No. 1:19-CV-10424 (MKV), 2021 WL 4482150, at *5 (S.D.N.Y. Sept. 30, 2021) (citation omitted).

Here, Plaintiff has plead no facts alleging that she has complied with New York's notice-of-claim provision and does not even dispute the Defendants' claim that she has not. (*See* Mot. at

21-22.) The Court therefore grants Defendants' motion to dismiss Plaintiff's state law claims, including all of her NYSHRL and IIED claims, with prejudice for failure to comply with New York's notice requirement. Because dismissal is required under New York's notice of claim provisions, the Court does not reach the merits of Plaintiff's arguments under her NYSHRL and IIED claims, nor of Defendants' argument regarding the Court's exercise of supplemental jurisdiction. (*See* Mot. at Point VIII.)

In sum, only the Plaintiff's Title VII claims for discrimination and retaliation against the County lack preliminary deficiencies. The Court will now address the merits of these remaining claims.

### D. Statute of Limitations for Title VII Claims

A plaintiff who wishes to bring a suit under Title VII must first file a claim with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the alleged unlawful practice. *Littlejohn v. City of New York*, 795 F.3d 297, 322 (2d Cir. 2015). If not filed within this timeframe, the claim is time-barred. *Staten v. City of New York*, No. 14 CIV. 4307(ER), 2015 WL 4461688, at *8 (S.D.N.Y. July 20, 2015) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002)). Plaintiff filed a claim with the EEOC on April 6, 2021, (Complaint, Ex. A.), thus the limitations period began 300 days earlier, on June 10, 2020. Accordingly, any allegedly discriminatory act Plaintiff contends occurred prior to June 10, 2020 is time barred and therefore not actionable under Title VII. These acts include: (Compl.)

> ¶ 24. Defendants' adverse employment actions and behavior: In or around November 2019, PLAINTIFF began to be treated differently by the White/Caucasian employees at the Sullivan County Adult Care Center.
>
> ¶ 25. Plaintiff was constantly harassed, bullied, and ignored in the workplace by other co-workers.

¶ 26. Following the unfair treatment received by co-workers, Plaintiff complained to supervisors, and management, and requested that she be moved to a different Nursing Floor because of the treatment she was receiving.

¶ 27. Plaintiff recalls several employees who were Hispanic/ African American, who were also constantly bullied, harassed, and ignored in the workplace by White/Caucasian co-workers and/or management. Upon information and belief, these employees have also been discriminated against and have proceeded with their own legal action against COUNTY and/or CARE CENTER.

¶ 28. In, or around, December 2019, Plaintiff made several complaints to the acting administrator, Defendant SOUTHERTON, including one in writing, that were all outright ignored.

¶ 31. Plaintiffs complaints and concerns to her supervisors and SOUTHERTON were never acknowledged or remediated.

¶ 32. In, or around, December 2019, an incident happened between several of the Nurses at the Sullivan County Care Center ("Incident").

¶ 33. Following the Incident, COUNTY and CARE CENTER only proceed with Civil Service charges against the Hispanic and/or African American nurses despite the White/Caucasian nurses allegedly being the aggressors in the Incident.

¶ 34. In, or about, March 2020, Civil Service charges were brought against Plaintiff and several other Hispanic/African American Nurses due to the December 2019 Incident.

¶ 35. Upon information and belief, Civil Service charges were never brought against the White/Caucasian nurses that were involved in the December 2019 Incident.

¶ 36. In fact, same White/Caucasian nurses involved in the December 2019 Incident were the COUNTY's and CARE CENTER's only witnesses in their proceeding against the Hispanic/African American nurses.

¶ 37. During one of the Civil Service hearings against an African American nurse, COUNTY and CARE CENTER referred to Plaintiff and other Hispanic/African American nurses as "Monsters" and that these Hispanic/African American nurses, including Plaintiff, casted a "Reign of Terror" on Sullivan County.

¶ 38. In, or about, mid-2020, Plaintiff testified at one of the Civil Service hearings ("Hearing"). Following Plaintiff's testimony, COUNTY and CARE CENTER threatened to bring Criminal Charges against Plaintiff for an unrelated incident if Plaintiff did not immediately resign.

¶ 39. Upon information and belief, similar threats were made to the other Hispanic/African American employees who testified at said Hearing.

> ¶ 40. In fact, shortly after said Hearing, a Hispanic employee was brought up on charges following her testimony at the Hearing only to further unveil the unfair and discriminatory treatment these nurses were receiving by SOUTHERTON, COUNTY, and CARE CENTER.

Plaintiff's sole allegation which occurred within the limitations period is that she was forced to resign on October 19, 2020 due to the threats of criminal charges being brought against her. (*Id.* ¶ 41.)

In addition, Plaintiff makes undated allegations that defendant Southerton "treats Hispanics/ African American employees different than their White/Caucasian counterparts" and "made several racial and prejudicial comments/remarks in the past which were witnessed by several employees." (*Id.* ¶¶ 29-30.) Because these allegations are undated and thus is it impossible to ascertain if they occurred within the limitations period, they too "are subject to dismissal based on untimeliness." *See Rojas v. Hum. Res. Admin.*, No. 18-CV-6852(KAM)(LB), 2022 WL 3716851, at *7–8 (E.D.N.Y. Aug. 29, 2022), *aff'd*, No. 22-2055-CV, 2023 WL 6380820 (2d Cir. Oct. 2, 2023).

Plaintiff responds to Defendants' arguments regarding timeliness by referencing the Second Circuit's "reasonably related" doctrine for Title VII claims. (Opp. at 12-13.) This doctrine holds that claims "not asserted before the EEOC may be pursued in a subsequent federal court action if they are 'reasonably related' to those that were filed with the agency." *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 613–14 (2d Cir. 1999). It is unclear how this doctrine can save Plaintiff's pre-June 10, 2020 allegations since Plaintiff *included* the very allegations at issue in her EEOC form. (*See* Compl., Ex. A.) Plaintiff thus fails to excuse her untimeliness.

Plaintiff's untimely allegations against the County are admissible, however, for purposes of liability and damages. It is well established that so long as at least "one alleged adverse

employment action…occurred within the applicable filing period[,] ... evidence of an earlier alleged retaliatory act may constitute relevant 'background evidence in support of [that] timely claim.'" *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 150 (2d Cir. 2012) (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 176 (2d Cir. 2005)). Such background evidence "may be considered to assess liability on the timely alleged act." *Jute,* 420 F.3d at 177. Standing alone, however, the allegations cannot constitute actionable instances of discrimination under Title VII.

Accordingly, Plaintiff's allegations of discrimination against the County, barring that of her forced resignation in October 2020, are dismissed without prejudice freedom to amend her Complaint to specify times for her undated claims. Plaintiff may also use the time-barred prior acts of discrimination as background evidence to support her timely claim against the County. *Chin*, 685 F.3d at 150.

### E. Title VII Discrimination Claim

To defeat a motion for judgment on the pleadings in a Title VII discrimination case, "a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015); *see also Buon v. Spindler*, 65 F.4th 64, 79 (2d Cir. 2023) ("absent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff [(1)] is a member of a protected class, [(2)] was qualified, [(3)] suffered an adverse employment action, and [(4)] has at least minimal support for the proposition that the employer was motivated by discriminatory intent") (citation omitted) (alterations in original). In determining whether an adverse employment action has occurred, the Court must consider whether the action in question "is more disruptive

10

than a mere inconvenience or an alteration of job responsibilities," and instead rises to the level of "a materially significant disadvantage with respect to the terms of the plaintiff's employment." *Littlejohn v. City of New York*, 795 F.3d 297, 311 n.10 (2d Cir. 2015) (internal quotation marks, alterations, citations omitted). A constructive discharge can constitute an adverse employment action. *Shapiro v. NY.C. Dep't of Educ.*, 561 F.Supp.2d 413, 424 (S.D.N.Y. 2008). A "constructive discharge occurs when an employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Walsh v. Scarsdale Union Free Sch. Dist.*, 375 F. Supp. 3d 467, 478 (S.D.N.Y. 2019) (quoting *Trachtenberg v. Dep't of Educ. of City of New York*, 937 F.Supp.2d 460 (S.D.N.Y. 2013). Working conditions are intolerable when, viewed as a whole, they are "difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Lowe v. CUSA, LLC*, No. 09 CIV. 7766 (PGG), 2011 WL 13334284, at *10 (S.D.N.Y. Sept. 29, 2011) (quoting *Costa v. City of New York*, 546 F. Supp. 2d 117, 119 (S.D.N.Y. 2008)).

  At this stage, Plaintiff's only non-time barred claim is her forced resignation on October 19, 2020. Consequently, the Court's analysis now turns to whether (1) the Plaintiff's forced resignation constituted an adverse employment action and (2) if race was a motivating factor in Plaintiff's forced resignation. *See Vega*, 801 F.3d at 87. Plaintiff alleges that the County took adverse action against her following her testifying at a Civil Service hearing by threatening criminal charges unless she resigned. (Compl. ¶ 38, 41.) Viewed in the light most favorable to the Plaintiff, the Court finds that Plaintiff's forced resignation constituted a constructive discharge for purposes of Title VII. The looming threats of criminal charges indicates working conditions "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled

11

to resign." *See Lowe*, 2011 WL 13334284, at *10. Plaintiff has sufficiently plead that she experienced an adverse employment action.

Next, the Court considers whether the Plaintiff's constructive discharge was motivated by her race. According to the Complaint, the County threatened Plaintiff with criminal charges following Plaintiff's testimony at a Civil Service proceeding regarding a workplace dispute between several Caucasian nurses and several Hispanic and/or African American Nurses. (Compl. ¶¶ 32, 38, 41.) The Complaint states that of the employees involved in this workplace dispute, only the Hispanic and/or African American nurses were brought up on Civil Service charges. (*Id.* ¶ 32-34.) The Plaintiff further alleges that the County made similar threats to other Hispanic and/or African American employees who testified at the same Civil Service proceeding. (*Id.* ¶ 39.) Taken together, these allegations suggest that Plaintiff's constructive discharge occurred under circumstances giving rise to an inference of discrimination. Accordingly, Plaintiff has sufficiently alleged facts that racial discrimination was a motivating factor in her constructive discharge. Thus, the Court denies Defendants' motion for judgment on the pleadings against Plaintiff's Title VII discrimination claim.

### F. Title VII Retaliation Claim

To state a claim for retaliation in violation of Title VII, a Plaintiff must plead that "(1) she participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging her; and (3) there exists a causal connection between the protected activity and the adverse action." *Patane v. Clark*, 508 F.3d 106, 115 (2d Cir. 2007). "A plaintiff engages in 'protected activity' when she (1) opposes employment practices prohibited under Title VII; (2) makes a charge of discrimination; or (3) participates in an investigation, proceeding or hearing arising under Title VII." *Khwaja v. Jobs to Move Am.,* No. 119CV07070JPCSDA, 2022 WL

19410313, at *10 n.23 (S.D.N.Y. Oct. 22, 2022), *report and recommendation adopted as modified*, No. 19CIV7070JPCSDA, 2023 WL 2734420 (S.D.N.Y. Mar. 31, 2023) (quoting *Bundschuh v. Inn on the Lake Hudson Hotels, LLC*, 914 F. Supp. 2d 395, 405 (W.D.N.Y. 2012)). Retaliation is unlawful when retaliatory acts are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).

Plaintiff claims that she was "retaliated against for her good faith complaints about discrimination" against her employer. (Compl. ¶ 23.) The Complaint is so vaguely pled, however, that it is difficult to ascertain what complaints about discrimination Plaintiff made, and when. For example, Plaintiff alleges that she complained to both Southerton and management "about unfair treatment received by co-workers," but fails to specify whether such complaints referenced discrimination on the basis of race. (*See* Compl. ¶¶ 26, 28.)

Later, Plaintiff alleges that she testified at a Civil Service proceeding on behalf of a coworker. (*Id.* ¶ 38.) The proceeding concerned an incident that had transpired between several nurses at the Care Center including Plaintiff in 2019. (*Id.* ¶ 34.) Following Plaintiff's testimony, the County threatened to bring criminal charges against Plaintiff for an unrelated incident if Plaintiff did not immediately resign, resulting in her constructive discharge. (*Id.* ¶ 41.) As with her earlier allegation, it is unclear whether by testifying at the Civil Service proceeding, Plaintiff was "making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 57. Plaintiff notes the County only brought Civil Service charges against Hispanic and/or African American nurses involved in the 2019 incident, despite White/Caucasian nurses "allegedly being the aggressors." (Compl. ¶ 33.) Such disparate enforcement suggests that Plaintiff's testimony may have concerned the County's racial discrimination. Without knowing for sure, however, it is impossible to determine if Plaintiff's testimony at the disciplinary hearing was a protected activity for purposes

of Title VII. This is because the Court cannot ascertain if, by testifying, Plaintiff "oppose[d] employment practices *prohibited under Title VII*" – i.e., discrimination on the basis of race. *See Khwaja*, 2022 WL 19410313, at *10 n.23. Finally, even if Plaintiff's testimony constituted protected activity under Title VII, it is unclear whether Plaintiff's testimony "in the middle of 2020" was before or after June 10, 2020 – the outside date for the limitations period. (Compl. ¶ 38.)

Accordingly, the Complaint fails to adequately allege that Plaintiff engaged in a protected activity for purposes of Title VII, and her retaliation claim against the County is therefore dismissed without prejudice.

### G. Leave to Amend

Plaintiff requests leave to amend her Complaint to plead a *Monell* claim under 42 U.S.C. § 1983. (Opp. at 11.) Under the Federal Rules of Civil Procedure, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P 15(a)(2). If a party seeks leave to amend a pleading, "[t]he court should freely give leave when justice so requires." *Id.* "The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)). "Mere delay, ... absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir.2008) (quoting *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)); *accord Block*, 988 F.2d at 350. Thus, if the underlying facts and circumstances upon which the moving party relies support a claim or defense sought to be added, the party should generally be allowed to test that claim or defense on the merits. *United States ex*

*rel. Maritime Admin. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*, 889 F.2d 1248, 1254 (2d Cir. 1989) (quoting *Foman*, 371 U.S. at 182).

In light of the Second Circuit's liberal standard for amendment of complaints, the Court grants Plaintiff leave to amend her Complaint to plead a *Monell* claim. Plaintiff may also amend her Complaint to substantiate any claims dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part the Defendants' motion for judgment on the pleadings. Specifically, the Court dismisses the following claims with prejudice: (1) Plaintiff's First Cause of Action against Susan Southerton, Sullivan County Adult Care Center d/b/a The Care Center at Sunset Lake, and the ten John Doe defendants; (2) Plaintiff's Second Cause of Action against Susan Southerton, Sullivan County Adult Care Center d/b/a The Care Center at Sunset Lake, and the ten John Doe defendants; (3) Plaintiff's Third Cause of Action against Susan Southerton, Sullivan County Government Center, Sullivan County Adult Care Center d/b/a The Care Center at Sunset Lake, and the ten John Doe defendants; (4) Plaintiff's Fourth Cause of Action against Susan Southerton, Sullivan County Government Center, Sullivan County Adult Care Center d/b/a The Care Center at Sunset Lake, and the ten John Doe defendants; and (5) Plaintiff's Fifth Cause of Action against Susan Southerton, Sullivan County Government Center, Sullivan County Adult Care Center d/b/a The Care Center at Sunset Lake, and the ten John Doe defendants. The Court dismisses Plaintiff's Second Cause of Action against Sullivan County Government Center without prejudice. Finally, in light of the dismissal of the above causes of action, Susan Southerton and Sullivan County Adult Care Center d/b/a The Care Center at Sunset Lake are dismissed as defendants from this action.

Plaintiff's First Cause of Action against Sullivan County Government Center may proceed.

Plaintiff is granted leave to file an Amended Complaint as to any claims that have been dismissed without prejudice. If Plaintiff chooses to do so, Plaintiff will have until January 17, 2024 to file an Amended Complaint. Sullivan County Government Center is then directed to answer or otherwise respond by January 31, 2024.

If Plaintiff fails to file an Amended Complaint within the time allowed, and she cannot show good cause to excuse such failure, any claims dismissed without prejudice by this Order will be deemed dismissed with prejudice. If no Amended Complaint is timely filed, the parties are directed to complete and file a Case Management Plan and Scheduling Order by February 7, 2024. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 43.

Dated:  December 20, 2023                            SO ORDERED:
          White Plains, New York

                                                      NELSON S. ROMÁN
                                                United States District Judge