UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARIA CRUZ

                                   Plaintiff,

-against-

SULLIVAN COUNTY GOVERNMENT
CENTER et al,

                                   Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __09/29/2025__

21-cv-06410 (NSR)

OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge:

      Plaintiff Maria Cruz ("Plaintiff") initiated this action on July 28, 2021, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A § 2000e et seq. and its Amendments ("Title VII") and New York state law against Defendants Susan Southerton ("Southerton"), Sullivan County Government Center (the "County"), Sullivan County Adult Care Center d/b/a The Care Center at Sunset Lake (the "Care Center"), and ten John Doe defendants (together, with Southerton, the County, and the Care Center, the "Defendants"). By Opinion and Order dated December 20, 2023 (ECF No. 53), this Court dismissed Defendants Southerton and Care Center from the action. Only a constructive discharge claim against the County survived.

      Presently before the Court is Defendant County's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, Defendant's Motion for Summary Judgment is GRANTED in its entirety.

1

**BACKGROUND**

The following factual background is derived from the parties' submissions[1] in connection with the motion, the record, and exhibits from discovery in the instant proceeding. The facts are undisputed unless otherwise stated.

Plaintiff, a Hispanic woman, was employed as a certified nursing assistant ("CNA") at the Care Center, an adult residential care facility in Liberty, New York from December 2018 until her resignation on October 19, 2020. (Davidoff Decl., Ex. A, "Compl." ¶¶ 21, 23.) Plaintiff alleged that she was repeatedly discriminated against on the basis of her race and color while employed at the Care Center, eventually leading to her constructive discharge. (*Id.* ¶ 25, Pl. Opp. at 5.) In particular, she alleges, she began to be treated differently by the other employees at Defendant's nursing home, in particular, that beginning around November 2019, CNA Rachel Hadley and other CNAs were "acting, like, [I] wasn't there… [t]hey started talking about me." (Pl. Dep. 37:14-17.) Plaintiff further stated that she made complaints to administrators Jennifer Thompson and Susan Southerton regarding problems that Plaintiff was having with the other CNAs. (*Id.* 38:9-25.) When asked about the content to the complaints to administrators, Plaintiff stated that she informed them that other employees including Rachel Hadley, Connie Maldonado, and an employee named Marissa "were just acting different, you know. They weren't working with me. They were working against me… They was just, you know, talking about me and not trying to help me. They didn't want me on that floor. They wanted me on a different floor." (*Id.* 39:24-41:6.)

---

[1] Defendant filed a Motion for Summary Judgment ("Mot.," ECF No. 76), attorney declarations ("Davidoff Decl.," ECF No. 77) and ("Davidoff Suppl.," ECF No. 81), a Memorandum of Law in Support ("MoL," ECF No. 78), a Rule 56.1 Statement ("Deft. 56.1," ECF No. 79) and a Reply Memorandum of Law ("Reply," ECF No. 80). Plaintiff filed a Memorandum of Law in Opposition ("Pl. Opp.," ECF No. 82), a counter Rule 56.1 Statement ("Pl. 56.1," ECF No. 83), and an attorney Declaration in Opposition ("Clancy Decl.," ECF No. 84).

At her deposition, Plaintiff could not recall what, if any racially prejudicial comments those three employees said to Plaintiff and did not refer to any overt or implied racially-related comments or actions by those employees. (*Id.* 41:8-14.) When asked about the several racial and prejudicial comments or remarks Sue Southerton allegedly made to Plaintiff, Plaintiff provided that when she went to complain to Southerton, the administrator "would believe the other girls" and "then she would be [like] don't bring the ghettoness in here" and "would say things like that." (*Id.* 41:20-42:3.) When asked about other remarks Southerton made that were racial and prejudicial, Plaintiff also averred that Southerton was "nasty" and that she once commented on Plaintiff's long nails. (*Id.* 41:20-42:3.) Plaintiff averred that there were no witnesses to Southerton's comments towards her. (*Id.* 42:7-10.) Plaintiff further provided that she believed other non-Caucasian CNAs made complaints about her to Southerton about racial remarks but did not know what those complaints entailed. (Pl. Dep. 42:17-24.)

In her own deposition, former-defendant Southerton denied ever making any derogatory comments towards Plaintiff. (Southerton Dep. 41:10-20.) She further averred that she could not recall having any meetings with Plaintiff, nor recalled receiving Plaintiff's complaints about racial discrimination or retaliation. (*Id.*18:19-22; 19:5-18; 21:7-11.) Further, Southerton averred that she did not have much contact with Plaintiff since Southerton worked during the day shift and Plaintiff worked evenings and nights. (*Id.* 20:6-17.) In a supplemental submission, Plaintiff confirms that she was not in possession of the written complaint addressed to administrators that she mentioned to in paragraph 25 of the Complaint and on page 39 of Plaintiff's deposition. (Davidoff Suppl. Decl., Ex. A., ECF No. 81-1.)

In December 2019, Plaintiff and other employees at the Adult Center, one of whom was Connie Maldonado, had a dispute in the parking lot during which the police were called.

(Southerton Dep. 22:3-9.) While specifics surrounding the nature of incident are unclear from the evidence on the record, several employees who were involved, including Plaintiff, were served with Notice and Statement of Charges pursuant to N.Y. Civ. Service Law §75 for alleged misconduct during the incident. (*See* Deft. 56.1, Ex. B, Def. Answer, Ex. B.) Further, as a result of that incident, Connie Maldonado sought a protective order against Plaintiff in the Village of Liberty court that ordered Plaintiff to stay away from Ms. Maldonado. (Pl. Dep. 47:12-18.)

On January 6, 2020, Plaintiff was involved in another incident outside of the Care Center parking lot involving Plaintiff's coworkers Lotoya Snowden and Rachel Hadley, in which Plaintiff and Rachel Hadley had an altercation. (Pl. Dep. 49:2-20.) Specifics surrounding that incident are also unclear from the record.

As a result of these two altercations and a third separate incident involving a resident at the Care Center, Plaintiff received a Notice and Statement of Charges pursuant to N.Y. Civ. Service Law §75 on March 16, 2020 ("March Charges"), which charged Plaintiff with five charges of misconduct for violating Defendant's Workplace Violence Prevention and Discriminatory Harassment policies. (ECF No. 77-2.) In particular, the March Charges stated that:

- On December 8, 2019, between 8 p.m. and midnight, Plaintiff failed to provide care to a resident to whom Plaintiff was assigned when she left him unattended for four hours and lied to a superior regarding the care of a resident.
- Also on December 8, 2019, around midnight, Plaintiff threatened coworker Connie Maldonado with physical violence saying words to the effect of "*I'll beat your ass when I see you outside of here.*" Plaintiff was also charged with engaging in a sustained, loud, verbal altercation with one or more coworkers.
- On January 6, 2020, between approximately midnight and 12:30 am, Plaintiff verbally harassed, stalked, and badgered coworker Rachel Hadley and threatened Rachel Hadley with physical violence and saying words to the effect of "*I'm coming back for you*" and "*I drive around with weapons just in case.*"

Pursuant to the March Charges, Plaintiff was suspended without pay for 30 days, commencing on March 16, 2020. (*Id.*) Plaintiff was also informed of her right to make and file an answer in writing

4

to the charges, her right to a hearing, and the opportunity to be represented and present any witnesses and other proof. (*Id.*) Plaintiff was further informed of the ability to settle and that if found guilty, the penalty or punishment imposed could consist of either dismissal from the service, demotion, suspension without pay for a period not exceeding two months, a fine not exceeding $100.00, or a reprimand. (*Id.*) After her 30-day suspension lapsed, Plaintiff was placed on Paid Administrative Leave beginning on April 16, 2020 through October 1, 2020. (Felony Complaint, ECF No. 77-3.)

Five months later, on September 30, 2020, Plaintiff received a Notice of Supplemental Civil Service charges ("September Charges") where Plaintiff was charged with misconduct and suspended without pay for 30 days commencing October 1, 2020. The September Civil Service charged Plaintiff with theft from the County by fraudulently applying for and obtaining unemployment benefits from April to October 2020 despite being ineligible. (ECF No. 77-2.) As stated in the previous notice letter, Plaintiff was informed of her rights. In addition to the September Charges, Plaintiff was also criminally charged with two felony complaints of Grand Larceny in the Third Degree for the same conduct. (Deft. 56.1 ¶ 7.) As a resolution of the criminal charges, Plaintiff pled guilty to reduced charges of Petit Larceny and paid restitution in amount of $9,200 of unemployment benefits she fraudulently received during that time. (*Id*. ¶ 8.)

A hearing to address both the March 2020 and September 2020 charges was scheduled for October 20, 2020. On October 19, 2020, one day before Plaintiff's scheduled hearing, Plaintiff, by her attorney at the time, emailed a letter to the Acting Administrator of the Care Center containing her resignation. (*See* ECF No. 16-1.) Plaintiff did not attend the hearing scheduled for the following day.

**PROCEDURAL HISTORY**

On July 28, 2021, Plaintiff commenced this action against Defendants via Complaint. (ECF No. 1.) On October 20, 2022, then-defendants Sullivan County Adult Care Center, Sullivan County Government Center, and Susan Southerton filed a motion for judgment on the pleadings. (ECF No. 43.) The Court entered an Opinion and Order dated December 20, 2023 which terminated Defendants Susan Southerton and the Care Center from the action. (ECF No. 53.) While Plaintiff was granted leave to file an Amended Complaint as to any claims that had been dismissed without prejudice against existing Defendants, Plaintiff failed to timely file an Amended Complaint. Therefore, all claims dismissed without prejudice in the December 20, 2023 Opinion and Order are deemed dismissed with prejudice. Thus, the only surviving claim is Plaintiff's Title VII discrimination claim against Sullivan County for constructive discharge resulting from her allegedly forced resignation on October 19, 2020. On October 10, 2024, Sullivan County filed the instant motion the summary judgment.

**LEGAL STANDARDS**

**Federal Rule of Civil Procedure 56**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, including depositions, documents, affidavits, or declarations "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party may support an assertion that there is no genuine dispute of a particular fact by "showing ... that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to the

nonmoving party to raise the existence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

To oppose summary judgment, "[s]tatements that are devoid of any specifics, but replete with conclusions" will not suffice. *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (holding the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (holding the nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation" (internal quotations and citations omitted)).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *accord Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008); *Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013). Courts must "draw all rational inferences in the non-movant's favor" when reviewing the record. *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505). Importantly, "the judge's function is not [ ] to weigh the evidence and determine the truth of the matter" or determine a witness's credibility. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. Rather, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Id.* at 250, 106 S.Ct. 2505. A court should grant summary judgment when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

**Title VII**

Title VII provides that an employer cannot discriminate against "any individual" based on his or her "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). "The ultimate issue in any employment discrimination case is whether the plaintiff has met her burden of proving that the adverse employment action was motivated, as least in part, by an impermissible reason, i.e., that there was discriminatory intent." *Baffa v. STAT Health Immediate Medical Care, P.C.*, 2013 WL 5234231, at *7 (E.D.N.Y. Sept. 17, 2013) (internal quotes omitted) (citing *Fields v. N.Y. State Office of Mental Retardation & Developmental Disabilities*, 115 F.3d 116, 119 (2d Cir. 1997)).

On a motion for summary judgment in a case wherein a plaintiff asserts that the employer's decision was a pretext for discrimination, the plaintiff's discrimination claim is subject to the *McDonnell Douglas* burden-shifting standard. *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015). Under this framework, a plaintiff bears the initial burden of demonstrating her prima facie case. *Cortes v. MTA N.Y. Transit*, 802 F.3d 226, 231 (2d Cir. 2015). "To establish a prima facie case of discrimination under Title VII, a plaintiff must prove that (1) she is a member of a protected class; (2) she is qualified for the position held; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination." *Stratton v. Dep't for the Aging for N.Y.C.*, 132 F.3d 869, 878 (2d Cir. 1997) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). To establish an inference of discrimination, a plaintiff must prove that an adverse employment action was taken against her "because of discriminatory animus on the part of [her] employer." *See Belfi v. Prendergast*, 191 F.3d 129, 139 (2d Cir. 1999).

**DISCUSSION**

Plaintiff's constructive discharge claim fails because she has not adduced evidence that would allow a reasonable jury to conclude that she was compelled to resign due to race-based discrimination. To state a case of constructive discharge, a plaintiff must show that an employer, rather than discharging the employee directly, intentionally creates a work atmosphere so intolerable that the employee is forced to quit involuntarily. *Cole-Hatchard v. Hoehmann*, No. 16-CV-5900, 2020 WL 5645815, at *12 (S.D.N.Y. Sept. 21, 2020) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 151–52 (2d Cir. 2003)). The Second Circuit has repeatedly explained that "working conditions are intolerable when, viewed as a whole, they are 'so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" *Terry v. Ashcroft*, 336 F.3d at 152 (quoting *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 89 (2d Cir. 1996)). Moreover, it has explained that "[b]ecause a reasonable person encounters life's circumstances cumulatively and not individually," the various conditions are to be treated in an "additive" manner, rather than "individually." *Chertkova*, 92 F.3d at 90. However, "mere dissatisfaction with working conditions, or difficult or unpleasant assignments, does not as a matter of law constitute a constructive discharge." *Stetson v. NYNEX Service Co.*, 995 F.2d 355, 360 (2d Cir. 1993). The Second Circuit has cautioned that the standard requires "intolerable" conditions, not simply "workplace disputes, personality conflicts, or occasional offensive utterances." *Adams v. Festival Fun Parks, LLC*, 560 F. App'x 47, 49 (2d Cir. 2014). Further, a plaintiff must also establish that the constructive discharge "occurred in circumstances giving rise to an inference of discrimination on the basis of [his] membership in [a protected] class." *Terry*, 336 F.3d at 152 (citing *Chertkova*).

In sum, the Court's goal is to ascertain whether, viewed as a whole, the facts in the case at hand could permit a fact-finder to conclude that the employee was forced to resign. *Id.* Notably, a constructive discharge claim is "difficult to establish and [is] routinely rejected by the courts." *Tassy*, 2023 WL 144112, at *6 (quotation marks omitted) (quoting *Wright v. Goldman, Sachs & Co.*, 387 F. Supp. 2d 314, 325 (S.D.N.Y. 2005)).

Here, Plaintiff avers that she was constructively discharged after repeated racial discrimination by Care Center administrators and employees and threats of "unrelated criminal charges" against her, which caused her work environment to become so intolerable that she had to resign. (*See generally* Pl. Opp.) Throughout Plaintiff's pleadings and opposition brief, Plaintiff argues, inter alia, that (i) she and other non-Caucasian nurses were harassed by Caucasian coworkers and racially targeted by administration, (ii) that administrators did not address racial discrimination claims Plaintiff reported to them, and (iii) and that Plaintiff was forced to resign due to said discrimination and threats of criminal charges to be brought against her. Even taking the Second Circuit's holistic view in assessing the change in environment, Plaintiff has not adduced evidence to support her constructive discharge claim. *See Chertkova*, 92 F.3d 81; *Terry*, 336 F.3d at 149.

First, regarding the harassment by Caucasian employees against Plaintiff and other non-Caucasian nurses, Plaintiff fails to provide even a scintilla of evidence (e.g., clear deposition statements, affidavits, correspondence, or other evidence) regarding race-based discrimination towards non-white CNAs at the Care Center. Plaintiff does not clearly identify nor provide support for the ways in which she was discriminated against, save for unconfirmed remarks by former defendant Southerton and Plaintiff's assertion that white employees "act[ed] different[ly]" towards her. (Pl. Dep. 40:8-12.) At her deposition, Plaintiff averred that when she went to speak to former-

defendant Southerton about Plaintiff's experiences with other CNAs, Southerton instructed Plaintiff not to "bring that 'ghettoness'" to the workplace. (Pl. Dep. 42:2-3.) The Court recognizes that "facially non-discriminatory terms" like "welfare queen, terrorist, thug, [and] illegal alien" "can invoke racist concepts." *Lloyd v. Holder*, No. 11-CV-3154, 2013 WL 6667531, at *9 (S.D.N.Y. Dec. 17, 2013). However, Plaintiff's averments are not sufficiently severe or pervasive to enable Plaintiff to overcome defendant's motion for summary judgment. *See Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) ("As a general rule, incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'") (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir.1997)); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir.1998) ("As a general matter, isolated remarks or occasional episodes will not merit relief under Title VII; ... to be actionable, the incidents of harassment must occur in concert or with a regularity that can reasonably be termed pervasive."), abrogated on other grounds by, *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).

Moreover, while the use of racial epithets or coded language is plainly improper, a stray remark, without more, is generally insufficient to support an inference of discrimination. *See Jain v. Marsh Inc.*, No. 08-CV-2515, 2010 WL 743553, at *3 (S.D.N.Y. Mar. 1, 2010) (finding that a single remark was insufficient to support an inference of discrimination, especially where "[p]laintiff [did] not claim that any other [of defendant's] employees personally harbored animus toward him because of his national origin"). In determining whether a remark is a stray remark that cannot support an inference of discrimination, courts consider: (1) who made the remark (i.e., a decisionmaker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror

could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process). *Crowley v. Billboard Mag.*, 576 F. Supp. 3d 132, 145 (S.D.N.Y. 2021)) (citation and quotation marks omitted).

Here, Southerton was the acting administrator at the time, and the remark could be highly inappropriate, however, there is insufficient evidence on this record to show that this comment was imbued with racism. Further, Plaintiff provides limited context for the alleged remark made in response to Plaintiff voicing complaints about her interactions with other employees and does not offer any information on when this comment was made during the course of her employment. Thus, Southerton's alleged "ghettoness" comment, is too thin a reed to support Plaintiff's race and national origin discrimination claim as Plaintiff fails to connect the remark to her alleged termination. *See Desrosiers v. Summit Sec. Servs., Inc.*, No. 21-CV-10941, 2022 WL 13808524, at *7 (S.D.N.Y. Oct. 21, 2022) (finding comments were stray remarks because plaintiff "ha[d] not alleged a sufficient causal nexus between the statements and his termination"); *Moore v. Verizon*, No. 13-CV-6467, 2016 WL 825001, at *9 (S.D.N.Y. Feb. 5, 2016) (finding that comments were non-actionable stray remarks because they "[were] not alleged to have arisen in a context at all related to the decision to suspend and later terminate [p]laintiff"). The comment, therefore, is a "stray remark that does not give rise to an inference of discrimination or show that race was the but-for cause of Plaintiff's [constructive discharge]." *Paupaw-Myrie v. Mount Vernon City Sch. Dist.*, 653 F. Supp. 3d 80, 98 (S.D.N.Y. 2023). Without anything further in the record, this cannot support an inference of discrimination as "[i]t is well established that 'the stray remarks [even] of a decision-maker, without more, cannot prove a claim of employment discrimination.'" *Lopez v. White Plains Hosp.*, 2022 WL 1004188 (S.D.N.Y. Mar. 30, 2022), aff'd, 2022 WL 19835765 (2d Cir. May 16, 2022) (quoting *Hasemann v. United Parcel Serv. of Am.*, Inc., 2013 WL 696424, at

*6 (D. Conn. Feb. 26, 2013)). To create an inference of discrimination, remarks must be more than "isolated, ambiguous, or unrelated to the adverse employment decision." *Tomassi v. Insignia Fin. Grp.*, 478 F.3d 111, 115 (2d Cir. 2007). Here, even layered onto Plaintiff's other scant examples of alleged discrimination, this remark is insufficient to demonstrate racially intolerable working conditions and could not allow a reasonable fact-finder to deduce that Plaintiff had no alternatives left but to resign.

Next, Plaintiff also failed to provide evidence to support her averments that administrators did not address racial discrimination claims she reported to them. Plaintiff had previously alleged in her Complaint that Southerton and other administrators failed to address her complaints, both oral and in writing, but did not produce any evidence to support her claim. In fact, at her deposition Plaintiff stated she lodged and had a copy of a written complaint regarding racial discrimination she had filed with Southerton (Pl. Dep. 39:5-22), but, when requested to provide the copy Plaintiff admitted in a subsequent supplemental production that she was not in possession of said document. (Davidoff Suppl. Decl., Ex. A., ECF No. 81-1.) Further, Southerton testified that she did not recall meeting with Plaintiff to address complaints related to discrimination, primarily worked a different schedule than Plaintiff, and did not receive any written complaint related to Plaintiff's discrimination claims. (Southerton Dep. 19:5-18, 20:6-17.)

Third, as for the threats Plaintiff attributes to her constructive discharge, during her deposition Plaintiff was unable to unequivocally identify what threats were made and by whom, seriously undermining her claim:

> Q: Yes. You say in your complaint that the County and Adult Care Center threatened to bring criminal charges against you. Who on behalf of the County or Adult Care Center were the ones who threatened to bring these criminal charges? Plaintiff's Answer: Sue, the administrator, I believe. (Pl. Dep. 29:17-22.)

> Q: What is the threat you claim was made to you by Sue Southerton about criminal charges?
> Plaintiff: No, it wasn't her. It wasn't Sue. It was Rachel.
> Q: Rachel who, Rachel Hadley?
> Plaintiff's Answer: Yes.
> Q: When do you say she threatened you with criminal charges?
> Plaintiff's Answer: I don't remember.
> Q: What was the nature of the criminal charge she threatened you?
> Plaintiff's Answer: Say that again. What was the nature?
> Q: Is it now your testimony that the representative of the County and the Adult Care Center who threatened to bring criminal charges against you was Rachel Hadley?
> Plaintiff's Answer: Yes. I mean she threatened me. What happened she called the cops and I didn't do anything. I was walking out. As I was walking out I was being threatened. (*Id.* 33:6-25.)
>
> Q: Following your testimony the County and Adult Care Center threatened to bring criminal charges against you for an unrelated incident if you did not immediately resign. Who do you say made these threats if you recall?
> Plaintiff: Threats to me?
> Q: Yes.
> Plaintiff: Sue Southerton.
> Q: What were the threats you claim she made? What did she say?
> Plaintiff: I don't remember to be honest, like, certain things like.
> Q: All right. So at this point, at this time, you don't remember what these alleged threats were, is that your testimony?
> Plaintiff: Yes. (*Id.* 34:5-22.)

Plaintiff fails to support allegations that she was threatened with criminal charges on account of her race and forced to resign, and Plaintiff's shifting allegations do not create a triable issue. The parties do not dispute that eventual criminal charges against Plaintiff were brought for fraudulently applying for and receiving unemployment benefits she was not entitled to during her time on paid administrative leave. Plaintiff pled guilty to lesser charges and paid restitution in the amount of unemployment benefits she received during that time period. Even taking the Second Circuit's holistic view in assessing the change in environment such that a reasonable trier-of-fact could deduce that the environment was hostile enough to compel a reasonable person to feel forced to resign, Plaintiff has not adduced evidence to support her claim. *See Chertkova*, 92 F.3d 81; *Terry*,

14

336 F.3d at 149. Plaintiff has offered no competent and definitive evidence that the alleged conduct of her coworkers and supervisors compelled her resignation, nor that the criminal charges were pretextual. In a discrimination case, summary judgment is appropriate "when the moving party demonstrates ... after drawing all inferences and resolving all ambiguities in favor of the nonmovant, that no reasonably jury could find in the non-movant's favor." *Chertkova*, 92 F.3d at 86. Nevertheless, "conclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment." *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 151 (2d Cir. 2007).

On the record, no reasonable jury would find that Plaintiff was subjected to conditions so intolerable as to compel her resignation. Plaintiff fails to meet the evidentiary burden to raise the existence of a genuine issue of material fact and fails to support the allegations in her Complaint. The Court notes that while the Court previously partially denied Defendants' motion for Judgment on the Pleadings, finding that Plaintiff had plausibly alleged racially-motivated hostility to support a constructive discharge claim, the standards at Rule 12 and Rule 56 are markedly different. At the pleading stage, Plaintiff's well-pleaded allegations were taken as true. At the summary judgment stage, however, Plaintiff must "set forth specific facts showing that there is a genuine issue for trial," Fed. R. Civ. P. 56(e), and may not rely solely on the allegations in her complaint. Here, despite the benefit of full discovery, Plaintiff has failed to provide competent evidence supporting her claim that her working conditions were objectively intolerable due to racial animus. Allegations in Plaintiff's Complaint, without evidentiary support, cannot defeat a properly supported Rule 56 motion. *See Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996). Plaintiff's deposition is equivocal, contradictory, and fails to substantiate her allegations, there is no evidentiary basis from the record from which a reasonable jury could conclude that

15

discriminatory atmosphere was present and so intolerable that Plaintiff has no choice but to resign. *See Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005).

Ultimately, Plaintiff leaves the Court with no basis in the record to find an inference of discrimination except her belief that she was discriminated against, which is insufficient. *See Nguyen v. Dep't of Corr. & Cmty. Servs.*, 169 F. Supp. 3d 375, 390 (S.D.N.Y. 2016) (finding that "bare suspicions of discrimination in the absence of any supporting evidence will not suffice" to survive summary judgment); *Mixon v. Buffalo Med. Grp., P.C.*, 2013 WL 597594, at *6 (W.D.N.Y. Jan. 28, 2013) ("Feelings [of discrimination] are not evidence." (alteration in original) (citation omitted)), *report and recommendation adopted*, 2013 WL 593985 (W.D.N.Y. Feb. 15, 2013); *Sibilla v. Follett Corp.*, 2012 WL 1077655, at *8 (E.D.N.Y. Mar. 30, 2012) (noting that "an employee's feelings and perceptions of being discriminated against are not evidence of discrimination" (citing *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 456 (2d Cir. 1999))); *Garcia v. Henry St. Settlement*, 501 F. Supp. 2d 531, 541 (S.D.N.Y. 2007) ("Speculation, conjecture[,] and guess-work cannot substitute for actual evidence of discrimination."); *Williams v. All. Nat'l Inc.*, 2001 WL 274107, at *5 (S.D.N.Y. Mar. 19, 2001) (noting that a plaintiff's "beliefs cannot replace the 'admissible evidence' required to permit an inference of discrimination and survive summary judgment"), *aff'd*, 24 F. App'x 50 (2d Cir. 2001).

Even treating the various conditions in an additive manner, rather than individually, Plaintiff fails to establish a triable issue of act as to the constructive discharge and defendants are entitled to summary judgment on the claim. Accordingly, the Court finds that Plaintiff has not adduced enough evidence to allow a fact finder to conclude that the constructive discharge occurred under circumstances giving rise to an inference discrimination on the basis of race.

**CONCLUSION**

For the foregoing reasons, Defendant Sullivan County's motion for summary judgment is GRANTED. The Clerk of Court is kindly directed to terminate the motion at ECF No. 76, to enter judgment in favor of Defendant Sullivan County and against Plaintiff, and to terminate the instant action.

SO ORDERED:

Dated: September 29, 2025
White Plains, New York

_____
Hon. Nelson S. Román
U.S. District Court, S.D.N.Y.